JACOBSON, Appellant, vs. TALLARD, Respondent.

*February 3—February 24, 1903.*

*Express contract: Breach: Pleadings: Amendment: Abuse of discretion.*

1. A contract provided that defendant was to take plaintiff's crop of tobacco, excluding what was damaged, paying therefor a specific price, delivery to be made at Viroqua. The crop, when tendered, was objected to by defendant as being of inferior quality, whereupon a settlement was reached whereby the whole was to be sent to defendant's warehouse at Edgerton, the damaged portion there to be separated from the whole, and its amount determined. No agreement was made as to the disposition of the damaged portion. *Held,* in an action on express contract, that there could be no recovery for damaged tobacco.

2. Where a demand, not embraced in the action, might require defendant to bring his evidence from a considerable distance, and can be made the subject of an independent action, it is no abuse of discretion, after both parties have rested, and a motion to direct a verdict has been argued, to refuse to permit an amendment of the complaint so as to state a cause of action thereon on *quantum meruit.*

APPEAL from a judgment of the circuit court for Vernon county: J. J. FRUIT, Circuit Judge. *Affirmed.*

This action was to recover the alleged contract price for plaintiff's crop of tobacco, of 2,485 pounds, at the price of three cents a pound for one-quarter thereof, and eight cents for the remainder. It appeared that in November, 1900, plaintiff and defendant entered into a written contract for the sale of the crop from two and one-half acres of tobacco at eight cents per pound for wrappers and binders, and "25 per cent. at three cents per pound tied in hands"; "all damaged tobacco to be excluded, and to be delivered in good packing condition at Viroqua." On January 12th the tobacco was tendered to defendant at Viroqua, and was objected to as being of such inferior quality as not to satisfy the contract.

After some negotiation, however, the crop, consisting of about
1,900 pounds of what the defendant calls "tobacco," and
some 500 pounds which plaintiff had packed separately as
damaged, which defendant refused to treat otherwise than
"trash," was put on board the cars for defendant, under a
written agreement, signed by both parties, in the following
words:

"$123.90.                    Viroqua, Wis., Jan. 12, 1901.

"Received from *C. F. Tallard, Jr.*, one hundred and
twenty-three and ninety one hundreds dollars, in full for my
1900 crop of tobacco, consisting of:

| | | |
|---|---:|---:|
| 1377 lbs. wrappers and binders @ 8c. per lb | $110 | 16 |
| 458 lbs. fillers @ 3c. per lb | 13 | 74 |
| Total | $123 | 90 |
| Less advance | 10 | 00 |
| | $113 | 90 |
| | 61 | 95 |
| Balance | $ 51 | 95 |

"On account of unmerchantable tobacco delivered with
the merchantable tobacco in my 1900 crop, I hereby agree
that *C. F. Talard, Jr.*, may retain the sum of $61.95 as liqui-
dated damages from the purchase price of said crop until the
said crop is assorted and the unmerchantable tobacco deter-
mined.

"Received payment,

"CHARLEY JACOBSON,
"C. F. TALLARD, JR."

No communication was thereafter made by either party to
the other until plaintiff commenced this suit. It appeared by
defendant's undisputed testimony that, upon assorting, an
amount exceeding one-half, viz., sixty or seventy per cent., of
the 1,900 pounds of tobacco, was found damaged and unmer-
chantable for cigar purposes, so that the $61.95 paid to the
plaintiff was more than he was entitled to under the agree-

ment of January 12th. There was no evidence as to the value of the rejected tobacco, except that defendant was quoted as having said that such tobacco might sell from a half a cent to a cent a pound, but was not available to him in his business. Defendant denied having used it, but testimony was offered of his admissions that he had used the whole in some way. The trial court directed a verdict for the defendant, upon which judgment was entered, from which the plaintiff appeals.

*C. H. Minshall,* for the appellant.

*C. W. Graves,* for the respondent.

DODGE, J. This action was founded upon the express contract between the parties, which was to the effect that defendant should purchase at a specified price the undamaged portion of plaintiff's crop. This contract was never modified, except by waiving the condition that before delivery the damaged portion which was not purchased should be separated from the undamaged, and that in lieu thereof the whole might be transmitted to defendant's warehouse in Edgerton, and the undamaged tobacco there separated, and the amount ascertained. In this modification there was no agreement on the part of the defendant to take or pay for any other tobacco than that originally contracted for. The parties made no stipulation whatever with reference to such damaged portion—whether because it was deemed of so trifling value as not likely to compensate the plaintiff for taking the whole tobacco back to his farm and sorting it, or to pay added cost of transportation and attention thereafter. Upon such sorting, it appears by undisputed evidence that the amount of undamaged tobacco was less than the amount for which defendant has paid. From this results logically the conclusion reached by the trial court—that he owes plaintiff nothing upon the express contract, having paid for all that he contracted to purchase and has received thereunder. This view

of the rights of the parties is in no wise in conflict with the doctrine established by many cases in this court—that one to whom is tendered, under an executory contract, property which does not comply therewith, must notify the deliverer that he does not receive it as satisfying the contract, either at the time of the delivery, or as soon as, by the exercise of reasonable diligence, he can ascertain the defects. *Locke v. Williamson*, 40 Wis. 377, 381; *Bostwick v. Mutual Life Ins. Co., ante*, p. 392, 89 N. W. 538; 92 N. W. 246. In the present case the mass of tobacco was not delivered as satisfying the contract, but merely in order that the defendant might select therefrom the contract commodity. Neither is it a case of alleged breach of warranty. The purpose of the passing of possession was not for delivery of a warranted commodity, but of a mass including the contract article, merely for the purpose of enabling the identification and separation thereof. Of course, when the identification was completed, and it was found that there remained a quantity of damaged tobacco which defendant had never purchased, that remained the property of the plaintiff, unless, indeed, there could be spelled out of the transaction a purpose to abandon it entirely by reason of its trifling value, and the burden of expense and labor imposed upon the defendant—a question not involved in this case and which we do not decide. If it was the property of the plaintiff, and was of value, it was, of course, subject to his disposal. The defendant had made no agreement either to return it to him, to dispose of it for him, or to purchase it from him. If, thereafter, the defendant so dealt with that damaged tobacco as to become liable upon implied contract to the plaintiff, that would be a distinct and different cause of action from the one sued on here, and a cause of action in no wise suggested by the complaint.

A request was made for leave to amend so as to state a cause of action *quantum meruit* which might have supported a recovery for this damaged tobacco; but such request did not

come until the case had been tried through, both parties had rested, and defendant's motion for direction of a verdict had been argued. While it was doubtless within the power of the court to have permitted such an amendment, we cannot deem the refusal thereof an abuse of judicial discretion. It was a claim in no wise suggested in the action originally brought, and for the trial of which defendant had prepared. It involved several questions of fact, as to which, doubtless, defendant's evidence must be brought from Edgerton to Viroqua, and it was a cause of action which the plaintiff might bring notwithstanding the decision in this case, all of which were cogent reasons for declining to allow the final disposal of this action to be interrupted in order to consider that claim.

We are convinced that the trial court committed no error in directing a verdict in favor of the defendant.

*By the Court.*—Judgment affirmed.